Good morning. May it please the Court, I'm Rafe Peterson with Holland & Knight. I'm here representing appellants. We sort of shorthanded it to say that they are the disadvantaged communities. I'd like to reserve three minutes of rebuttal, please. California is in a water crisis, and this case is about the equity of water availability and an attempt to break the cycle of poverty and health risks and housing insecurity caused by generations of redlining and disenfranchisement. Appellants represent people of color who have been systematically and consciously denied access to clean, affordable, and readily available water. And they bear a disproportionate amount of the harm from the current crisis. And the affluent communities are not similarly impacted, even during drought. So for decades, this Court has allowed environmental groups to intervene and have standing in cases involving resource preservation, pollution prevention, and public health risks. We represent the same issues. We're here to appear in NEPA Corps' case to ask to recognize the standing of those who benefit from a project. NEPA is about human health and the environment. The human health benefits of this project go directly to our clients, our reappellants. That all may be, but why isn't this moved? Sure. So there's three reasons. The first one is that the Court never entered an order. There was no final judgment in this case. There was a minute order, but that didn't effectively enter judgment. And, you know, the courts have said that you really need to apply this mechanically because of the importance of it, and that's at the long case. Is there any question that it was intended to be a final judgment? It seems like it's gone back to the agency to redo the analyses, and nothing is before the district court, right? It was murky because at the same time, the judge in September also ordered a status conference for several weeks later, and then there was a status conference where the judge said, well, what do you all want to talk about what's going on in this case? And then this minute order came out. And, again, you know, it should be mechanically applied because of this confusion because it could have an inequity if people were not as sophisticated, especially in a case like this where there was multiple filings and various motions at issue. So in that case, but, you know, it doesn't mean it doesn't end. As DOJ pointed out, there's a 150-day clock. But second, and I think more important. So, I mean, if we wait, I don't know, I haven't calculated, but 90 more days or whatever, will it be this argument goes away? Yeah, and we still have a little bit of time. So if the court were to enter judgment for us and grant our intervention in the next week or two, we would still have time to make a decision whether or not to appeal. Well, that's my problem, I think, with your position here, is that you wouldn't, under our cases of Pitt River and Elsia, you don't have the ability to take the appeal. And pretty much none of the actual parties to the case are going to take an appeal. So that's why I don't understand what the point of all this is. Well, you know, I think Elsia is distinguishable in our case. And, you know, the Pitt River case said that Elsia wasn't, attempted to establish a hard and fast rule prohibiting non-agency litigants from killing or murder. I mean, the issue with Elsia is the only one that was harmed by the decision was the agency itself. It's one of these rule-making cases where the agency is forced. So in Elsia, there were the environmental groups who were worried about the salmon. And they were saying, leave this rule in effect. Don't vacate it because you're going to hurt the salmon in the meantime. But the court actually made findings that basically said, well, in this case, because it was merely a remand order, it wasn't vacated. Our case is completely different in that this, so Cadiz had a bundle of rights. And those bundle of rights, they had spent money obtaining these right-of-ways. They were vacated. That actually had, after a finding on the merits, that it was improper. That's true in Elsia, too. The rule about the salmon was not in effect. That was the problem the interveners were upset about. I don't remember which one was the wild and which one was the farmed salmon. But the rule was invalidated. Right. But what the court said is that it wasn't a final decision but laid out a three-part test. And I think we meet that three-part test. Right. The first one is whether the court conclusively resolves a separable legal issue. In this case, NEPA allows for three different types of review, a categorical exclusion, an environmental assessment, or an EIS. In this case, the court found that the use of categorical exclusion was improper under law, basically an APA finding. So it was clearly conclusively resolving that issue. And even with remand, that was Elsie. Elsie said it was arbitrary and capricious to not treat the farmed salmon and the wild salmon the same, and so it validated the rule. But under the second factor, and it is forcing the agency, what was, you know, if I can go through all the factors, the second factor is forcing the agency to apply a potentially erroneous rule, which may result in a wasted proceeding. Again, the agency had a choice of three possible analyses. And because they dated and made a legal decision, that agency can no longer rely on a categorical exclusion. That's different in Elsie where there was no direction, there was no findings that was limiting the agency's options. So, counsel, if we looked at the third factor, which is review, would, as a practical matter, be foreclosed if an immediate appeal were unavailable? That's the third factor, right? Correct. And I'm not the, I don't mean this in a snippy kind of way, but do you have more than delay is the same as deny, justice delayed is justice denied, because this is going to take a while and we would have, there might well be a problem resurrecting this. Is there more than that? Yes, there is. Because, again, the court found, actually looked at the, you know, used the record, and actually it was basically a summary judgment finding. Because the court said you can no longer use category, the use of a categorical exclusion violated the law. So, when the agency goes back, you know, I think that's appealable. And, frankly, it was wrong. Because the agency was looking at administrative actions and could have used a categorical exclusion. But why, as a practical matter, I mean, the government, as a theoretical matter, could still grant this, right? It couldn't use a categorical exclusion again. Okay. It couldn't use the categorical, but it could still evaluate it according to the law laid out by the district court and grant, right? Could eventually, I suppose, I suppose eventually it could approve the permit. Yes. But we don't know whether or not that's going to happen as a practical matter. We don't know, but it's review what is a practical matter before close. And review of the right of ways under a categorical exclusion has been foreclosed. And that is the best. Didn't the agency admit, I mean, the agency doesn't even want to do the categorical exclusion, I don't think, because they admitted error. They want to redo this. So, even if you won that argument, the agency doesn't seem to want to use that anymore anyway. Well, I mean, the agency reversed after a change in administration. So, I mean, that happens. That does happen, but, you know, an agency can't take away someone's rights by fiat, right? So, the agency still has to show that there was a basis for their decision in order to take away these rights. And we think that was faulty because, again, these are right of ways. It was a name change, a change in the ownership of the pipeline. And it was a change in use. It's not going to be gas. It's going to be water. Nothing changed underground. The pipeline's been there for 20 years. It should have been subjected to a categorical exclusion, which rather than going through 10 years of an EIS. And delay is what the environmental groups in this case want. I mean, they've litigated. They have two cases over this pipeline alone. And they've litigated over the Greater Cadiz Project now for 10 years. Delay favors them. That's why they're here. And the delay has a disproportionate impact upon our clients. And that's why, when they were seeking remand and vacature, if the agency had only sought remand, we probably wouldn't have intervened. But when they said they were going to vacate, we were attempting to come in and say, well, you have to consider the disruptive consequences on disadvantaged communities. And you also have to consider the impact on the public. And no one else made those arguments. And, no surprise, the court didn't make any findings on it. And that's legal error. And so if we had been allowed to intervene and would have had standing, right, and would have allowed them to intervene in that case, then we could have gone forward and made those arguments on appeal as necessary. And that's why I think, you know, the – Can I ask you about that? Because I'm confused about there was this parallel litigation. So you tried to intervene in this case. But am I right that you did try to intervene in the National Land Conservancy case? Yeah, so that was an NHPA case. So that is a case concerning, you know, I think there is – the driver case was our case because this court actually made – But the court's order basically vacates these rights of way under both. I mean, the NHPA was another basis. And so if that basis stands, even if you're right about your NEPA basis, the thing is still vacated based on the NHPA basis. Well, there's two issues. One, we don't have to be in full relief. I mean, under the case law, we have to show that we're entitled to some relief. If we could get relief on the NEPA issues, that would be a major victory because then they wouldn't have to go through. The rights of way would still be vacated. Well, I think there's also a question because the court in the parallel case relied on his analysis in this case. And, again, I think it was improper. He did make findings on NHPA. But to, I think, go to Judge Friedland's point, aren't you out of luck on that because you didn't intervene? So even if you were right, you can't do anything about that in the other case. Well, I think that other case's decision would also be subject to having some problems because, again, he relied – this was the driving case. And he relied on this case for his decision-making and then simply entered it. But even if there were, quote, unquote, other problems, and I'm not sure exactly what that means, you wouldn't have any ability to do anything about that. So it's conceivable that if something else happened, it might have been to your benefit, but it wouldn't be because you had any legal right to do anything about it, right? Well, but, Your Honor, I could still make arguments about NEPA. So upon appeal, that, you know, there was more than one issue to this case, right? And in this case, during the – if we were, you know, for granted intervention, then we would still have the ability. And having a win in NEPA is significant to us because, you know, that's the reason why we're here, to make the point that NEPA needs to consider the human impacts to our clients. And if there was a decision that found that his decision was faulty on the category of exclusion, sure, they may still have to fix something with NHPA, but that's a lot different than spending five years on an environmental impact statement. That is, you know. But either way, I mean, the judge basically vacated these rights of way under more than one rationale. In more than one case, you've only tried to intervene in one case on some of the rationales. So in the immediate term, the rights of way stayed vacated, even if you prevail. And the agency has said, we're starting over. We want to start over on NEPA. So I don't even know how you could stop the agency from doing that at this point. I mean, they get to do it again anyway, at least under the part you didn't try to intervene in. And so at that point, they've got the issue again, and they're reconsidering it. And how can anything you do stop them from doing what they think they need to do at that point? Well, if the lower court's findings were improper, because he failed to consider the disruptive consequences, then you could have a remand. And having a remand doesn't harm us as much, because then the project can still move forward. Do you mean remand to the agency or remand to the district court? Remand to the agency. But we already have a remand to the agency. That's my point. I know, but we also have vacature, and that's the part of the decision that was wrong. Sure, an agency can always take a remand, but it's different when there is vacature. And that's what the Alsea case really addresses, that sometimes there is that a remand can actually go so far as to be a final judgment. And this was, in fact, the final judgment. I actually thought the Pitt River case was even more on point against you, because it seemed like they were just in the same posture as the parties were there. And what the court said is just that as to the parties in your position, the remand bar is just not final. It's not something that you can take an appeal from, because you can go back, you can participate in the agency proceedings. And it might well be that the agency will come out in your favor in a way that you want again. And so there's nothing really for us to take an appeal from. At least that's the rationale that I really was saying. Yeah, I think it's different when you're taking away a permit that was something that was given to a private party. And I think that's the fundamental distinction in kind of this bunch of cases. And, you know, sure, we might have a right to participate, but we have that right anyway. I mean, that's not really giving us something, right? We're allowed to participate in the public forum. But I think the real difference is that when the court decided not only to grant the remand, but to strike the right of ways, then that is a final decision. It's a final judgment, right? It's something, and final judgments are appealable. It could be the collateral order factor, and, I mean, there's a couple different ways it could go. But it's the equivalent of an APA final order that something was arbitrary, capricious, and those are, you know, those are appealable. But at this point, though, the agency might well, after these more fulsome analysis, might well come to the same conclusion it did before, and be vindicated. You know what I'm saying? That's what I thought we were saying in Mid-River. But I think the Puget Sound case, and I know that that case is not, you know, I think it's just a good road map, you know, where it basically says when you finally resolve all claims and do not require the agency to take any action at all, I mean, that's kind of where we are. They're not required to do anything. They could sit on this permit forever, right? They don't, they're not required, they weren't ordered to do a particular analysis. The permit is dead, and that harms us.  Not with a remand. I mean, remand in terms of timeliness. So with a remand, though, generally speaking, that's why there's a separate set of findings that have to be made when it's remanded vacature, because you're actually taking away legal rights and making, that's why you have to make a finding of error, and then you also have to consider the impact on the public. And, again, that's why we're here, because this has, having this right-of-way set aside has a very real impact upon our client's interests, right? I mean, we were in the permit application. I mean, it was stated that it was to our client's benefits, right? And it's a linear project, but right along, I mean, I'm hoping it's not disputed that, you know, this project was in part intended to benefit the very communities that we represent. And so now that it has been not just remanded but vacated, our rights have been affected, and we believe that we then have a right to appeal because there's been a final judgment that is, you know, an appealable order. Just hit the bell so you're timed for a vote. Sure. Thank you. You're up next. May it please the Court, Amelia Yowell on behalf of Federal Appellees. With me at council table is Counsel for Plaintiffs Appellees, Elizabeth Forsyth, and she is here in case the Court has any questions. The Court should dismiss this case as moot because it can provide no meaningful relief to the organizations for three independent reasons. First, the notice of appeal deadline has run, and no party to the underlying case has filed a notice of appeal. Therefore, even if this Court were to grant the organization's intervention, there's no underlying case for the organizations to intervene in. The District Court issued its remand order on September 13th and closed the case on October 3rd. My friend mentioned that Rule 58 is to be applied mechanically, but courts have also recognized that it's not to be applied mindlessly either. And by October 3rd, the record was clear that all parties here were aware that there was nothing left for the District Court to do. There were no remaining claims or issues and that the case had been closed. And, in fact, plaintiffs have relied on that October 3rd case closure order and filed motions for returning these fees under EJA. So all the parties here are treating it as if there's been final judgment and that the case is closed. But there wasn't. There wasn't a separate document. Your Honor, we believe that the October 3rd case closure order satisfies Rule 58's separate document requirement. Is there – what's your best case for that? Sure. Our best case on that particular point is the Boundary case, Boundary Motor Co. versus Abco Property Insurance. And that case recognized that a civil minute entry order can satisfy Rule 58. There was a – just like here, there was a minute order prepared at the direction of the judge. It was noted on the civil docket in a separate ECF entry, just like this one was here. It was file stamped and signed by the clerk, as it was here. And this court held that that satisfied Rule 58 because it was clearly, by its language, a decision of the court and that all parties were, therefore, aware of the appeal deadline. And so I would rely on that as our best case. But even if you're not convinced that the notice of appeal deadline has run, there are two other separate reasons why the court can't provide any meaningful relief. First, I would point the court to the separate case, the Native American Land Conservation case, where the district court, although the cases were related, they were not formally consolidated. They were always proceeding on parallel tracks. The PDs, the holder of the rights of way, intervened in both cases. But here the organizations only intervened or moved to intervene in the case that's before the court now. How do you respond to your friend's argument that there's a difference because of the vacatur? I disagree with my friend's argument on that point. The district court vacated the rights of way in both cases. The district court made merits findings both as to the NEPA arguments and as to the National Preservation Act claims, and did not say in any way that if the NEPA claims went away, the National Historic Preservation Act claims wouldn't support the court's vacatur decision. The court vacated in both cases. And if the organizations were allowed to intervene in our case, they wouldn't be able to challenge the vacatur in the other case. Because, again, they didn't move to intervene there. So the vacatur would stand regardless. And I don't see how the organizations appealing it in one case and not the other would provide it any meaningful, effective relief. Is there a difference in the timing of the remand? I mean, if they somehow could change the NEPA ruling, does NEPA take longer than NHPA, so it would, like, shorten the timeline in general? I'm not aware of any timing issues that would affect the remand. And I would note, as Your Honor did in asking my friend, the agency has conceded that their NEPA analysis was not as fulsome as it should have been, and it's indicated that it wants to go back and redo that analysis. And the organizations, even if they prevailed on the NEPA point, wouldn't be able to force the agency to issue a new decision in the way that the organizations, you know, wished that they would have. But the organizations can still participate in the agency's remand proceedings. And the remand that the district court entered here only allows the agency to do additional analysis, and the agency, you know, could still reach the outcome that the organizations would like. Potentially even after the agency looks at the extraordinary circumstances prong that, you know, wasn't as fully fleshed out as it would have liked, the agency could still perhaps rely on a categorical exclusion in the next decision. But in any way, this goes to the third reason why the case is moot, because the organizations can participate on those proceedings on remand and potentially receive the same relief that they're asking the court for now. You know, that's why. So your view is that during the remand that's going to take place, the agency could decide that the categorical exemptions, that a categorical exemption does apply? Possibly, Your Honor. So the way that categorical exclusions or exemptions work in the NEPA context is that there's a list of actions that are normally categorically excluded. And the agency can apply those unless there are extraordinary circumstances that show that that sort of action would have a significant impact on the environment. And in this case, BLM conceded in the district court that it didn't fully examine whether there were extraordinary circumstances presented by the rights-of-way here and asked the court to remand it so it could really consider whether there were any of those extraordinary circumstances. And the agency will examine that on remand. And if there are, in fact, extraordinary circumstances, then the agency will move to prepare either an EA or an EIS. But presumably, given what you've just said, the agency will not be arguing in the future that as a matter of law there can't be a categorical exemption. Your Honor, I can't, you know, bind the agency's future decision because the agency has to go back and look at the evidence that it didn't consider the first time around in making that kind of decision about whether there's extraordinary circumstances present. And it really is a very factual-based analysis that really depends on, you know, all this information that the agency didn't have before it and that the remand is supposed to allow the agency to consider. So it's hard to say if I'm at this point. But the fact that there is this remand and the fact that the organizations will be able to participate in it, and it also means that there's a third independent reason why the court cannot grant any effective relief, and that's because the organizations cannot appeal the district court's remand decision under Alcea Valley and River Tribe. And I will note that my friend talked about the fact that these were rights-of-way and discussed the private organization or the private party's, you know, interests. But I will note that the holder of the rights-of-way, Cadiz, you know, hasn't filed an appeal in the underlying case, and the organizations also don't claim any sort of private property interest in the rights-of-way themselves. And for those reasons, you know, it doesn't fit within any sort of exception to Alcea Valley. The government would submit that this case falls squarely within the parameters of Alcea Valley. There was a decision on the merits here, like in Alcea Valley. There was a vacater of the agency action, also like in Alcea Valley. And Judge Watford, I agree that Pitt River is also a very strong case for us on that point as well. So for all three of those separate reasons, notice of appeal deadline has run. The rights-of-way were vacated in a separate case, and the organizations can't appeal under Alcea Valley anyways. The government would submit that this case is moot and that the court should dismiss the appeal. I'm happy to address the merits of the intervention question. If the court has no other questions, thank you very much. Thank you very much. I hope Alcea has some time for rebuttal. Thank you, Your Honor. The harm to us is from delay, and delay is the goal of the plaintiff in this case. And the notion that we're provided another opportunity to comment on a project is not why we're here. We already have that. The harm happens when the right-of-ways were struck. Our clients were directly harmed because they have a direct interest in the water. We want the water. We don't want the process. So it seems like you're arguing that Alcea Valley is wrongly decided, really, because there was a party who was trying to intervene there that was in a very similar posture, saying their interests were going to be impacted by the vacature in the meantime. And, I mean, maybe you want us to take it on bonk, but I don't know. Is that really your argument? No, my argument is that we fit squarely within the exception of Alcea Valley. They laid out a three-part test and that we fit squarely within it because there was a final decision on the merits, and it has real consequences. And it's not true that they can do a categorical exclusion. The court made findings, and there's going to be risk judicata on that. They will not be allowed to. So they've taken away one of the avenues, and, of course, it's the quickest avenue to review. Sorry, can I go back, though? Of course. And, I mean, yes, Alcea Valley has factors, but the case itself said this is not final and appealable, and it seems like you're in a posture that's the same as the interveners there were. I think it's different because the interveners, because here, again, it's a private, it is more akin to sort of like a private right of action. There, the agency would be forced to go back and redo what it's doing, which is, I think, the rulemaking case, the best way I can articulate it is the rulemaking cases where there's a remand are fundamentally different from cases where there are private parties that actually have rights taken away from them, and that's more the case here. And that's why there was this exception, and that's why Pitt River said it's not a hard and fast rule from prohibiting a non-agency litigant from appealing a remand order. Here, again, it's remand and vacature, and I think that there are, you know, it's a final decision under 28 U.S.C. 1291 because it's immediately appealable in the sense that it has, you know, it's a final ruling on the merits. They vacated the permit, and, you know, so this is, again, closer to Puget Sound. You know, the other points I would make is that, again, if we were able to go back and make findings on NEPA, that is significant to us. There's more than one claim in this action, right? And that is real relief to our clients because it's been sent back from an open-ended process, and I do believe that it's appealable on the findings on the vacature because the court failed to consider our interests. He didn't let us in, and lo and behold, the court made no findings on the disruptive consequences and the impacts to the public because no one else was there to argue it, you know, which has been kind of our main argument. So I think we can still benefit, you know, in the benefits of having the full remainder of choices give me a quicker approval, but that has been cut off now. And instead, it's just an open-ended process. And finally, I'm confused. I'll give you time to make your final point, but I'm just confused about what you just said about no one being there to make the argument. You were there. You made the arguments. You were saying the district court just turned out to debate your argument, and you were allowed to be brief. You made all the arguments that you want against vacatures, and apparently the district court just didn't find that persuasive. So I don't think you're – all you want to do now is get a pellet review of that decision, and that's why I think you run into the problems with LC and Pitt River. But there was no – I just think you were kind of unfairly castigating the district court for not allowing you to be heard. You were heard. Well, yeah, but the Forest Conservation Council case, it's fundamentally different between being allowed to file an amicus brief and having – being allowed to intervene, right? You just don't have control over the ability to take the opinion. That's what I'm saying. You were not going to be allowed to make any additional arguments, I don't think. That's what I was trying to figure out. You're saying you weren't fully heard on the interests of your clients when the judge was trying to make the decision. Yeah, I don't think we were because there were no findings whatsoever regarding the public interest or whether or not there was disruptive consequences. You were heard. It's just the district court – you just don't like what the district court did. There's no reason to believe that if you had been allowed to intervene, that the district court would have done anything different. You would have been able to take an appeal, but – Not in itself is significant. Yeah, I mean, I'm not attempting to cast aspersions on the court when I'm saying – I'm more doing that in a sense saying that the vacature order was incorrect and that, you know, getting to some of the intervention issues, one of the main issues in intervention and adequacy of representative parties is who would make certain arguments. And we are fundamentally different than every other party in this case because we were there to make these arguments on public interest and the importance of this water to communities of color. Was there a final point you wanted to make? Because you're running over your time now. Yeah, I mean, I think that the spread cases and the Idaho conservation cases are favorable to us, and I think that's where the court looked that even if there was a final order, they allowed appeal because of the fact that we do have – because if there wasn't a mistake in denying intervention, then we would have had an opportunity to assert these rights in the later proceedings. And I think those should be the controlling cases in the moodness. I thank you for your time. All right, thank you very much. The case just argued is submitted, and we are adjourned for this session of the court. All rise. This court for this session stands adjourned.
judges: WATFORD, FRIEDLAND, BENNETT